IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD W.,[1] | Case No. 6:21-cv-00969-JR |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Richard W. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits as of November 24, 2015.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in 1964, plaintiff alleged disability beginning December 9, 2013, due to chronic fatigue syndrome, chronic pain, sleep apnea, asthma, depression, anxiety, fibromyalgia, and headaches. Tr. 157, 200, 978. On June 28, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 43-71. On September 19, 2017, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-26.

Plaintiff timely filed an appeal and, on October 25, 2019, the Court reversed the ALJ's decision and remanded the case for further proceedings. In particular, the Court found that the ALJ erred in evaluating the medical opinions of primary care physician Hsiang-Sen Yeh, M.D., and treating mental health counselor Nicholas Labarre.[3] Tr. 723-28. However, the record was ambiguous concerning the extent of plaintiff's impairments because "the ALJ wholly failed to distinguish between the period [of plaintiff's opioid dependency] and the period after when he had stabilized with Suboxone." Tr. 728-29. Thus, given "[t]he remote date last insured of December 31, 2018, coupled with the unclear impact of plaintiff's narcotic usage," the Court resolved that "consultation with a medical expert [was] appropriate." Tr. 729.

Plaintiff was subsequently found to be disabled as of July 6, 2019, his 55th birthday. Tr. 878-84. As a result, plaintiff's claim for Title II Disability Insurance Benefits was denied (although his claim for Title XVI Social Security Income was granted). Tr. 595, 733. In vacating the prior

---

[2] The record before the Court constitutes more than 2200 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Mr. Labarre "was working closely with, and under the supervision of Steven Rolnick, Ph.D., at all relevant times, [such that] his opinion is that of an acceptable medical source." Tr. 722 (citation and internal quotations omitted).

Page 2 – OPINION AND ORDER

ALJ decision, the Appeals Council reiterated that the case was remanded "for further proceedings consistent with the order of the court" to adjudicate "the period prior to July 6, 2019." Tr. 733.

On October 5, 2022, a second hearing was held concerning the closed period from the alleged onset date through the date last insured. Tr. 622-76. On March 11, 2021, the ALJ issued a second decision finding plaintiff not disabled; no medical expert was employed, and the impact of plaintiff's opioid use was not addressed. Tr. 595-611.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity "from his alleged onset date of December 9, 2013 through his date last insured of December 31, 2018." Tr. 598. At step two, the ALJ determined the following impairments were medically determinable and severe: "bilateral shoulder degenerative joint disease; obesity; obstructive sleep apnea; somatic symptom disorder; major depressive disorder; borderline personality disorder; seizures and fibromyalgia." *Id.* At step three, the ALJ found plaintiff's impairments, whether considered alone or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R § 404.1567(b) except:

> [He can] occasionally lift and carry up to 20 pounds; frequently lift and carry 10 pounds or less; sit for six hours in an eight hour day; stand or walk in combination for no more than two hours in an eight hour day; and push and pull as much as he can lift and carry. [Plaintiff] can reach overhead occasionally with the bilateral upper extremities. He can reach in all other directions frequently with the bilateral upper extremities. He can occasionally climb ramps and stairs and avoid ladders, ropes, and scaffolding. He can never work at unprotected heights; never work in the vicinity of moving mechanical parts; and never operate a motor vehicle as part

>of job duties. [Plaintiff] is limited to simple routine tasks at reasoning level two or less; simple work related decisions; and occasional interaction with supervisors, coworkers and the public. [Plaintiff's] time off task can be accommodated by normal breaks.

Tr. 600.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 609. At step five, the ALJ concluded, based on the VE's testimony, that plaintiff could perform a significant number of jobs in the national economy despite his impairments, such as electrical accessories assembler, routing clerk, and production assembler. Tr. 609-10.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to find his migraines severe at step two; and (2) discounting the opinions of Dr. Yeh and Mr. Labarre. Pl.'s Opening Br. 2-3 (doc. 13). Alternatively, plaintiff asserts the ALJ neglected to consult a medical expert and consider the entire adjudication period (i.e., through July 6, 2019) in accordance with this Court's and the Appeal Council's remand orders. *Id.* at 18-19.

The Commissioner concedes harmful legal error such that the sole issue on review is the proper legal remedy.[4] Plaintiff contends Dr. Yeh's and Mr. Labarre's opinions should be credited as true, and this case remanded for the immediate payment of benefits "as of July 2014," which coincides with his 50th birthday. Pl.'s Opening Br. 8 (doc. 13). Conversely, the Commissioner asserts further proceedings are warranted because the medical record is ambiguous in light of

---

[4] The Commissioner repeatedly acknowledges that the ALJ's "final decision contained legal errors," thereby necessitating reversal. *See, e.g.,* Def.'s Resp. Br. 2 (doc. 16). Yet the Commissioner does not specifically address what those errors are, except to note that "[i]t appears the ALJ did not support his decision with substantial evidence when he gave [the opinions of Dr. Yeh and Mr. Labarre] only some weight." *Id.* at 6. In other words, beyond generally asserting that a remand for a finding of disability is the exception and that factual issues remain, the Commissioner does not proffer any argument related to the content of the record, the issues raised by plaintiff, the ALJ's findings, or the proper legal remedy given the particular facts of this case.

Page 4 – OPINION AND ORDER

plaintiff's hearing statements and the opinions of the state agency consulting sources, who "found Plaintiff had greater abilities than he claimed." Def.'s Resp. Br. 5-6 (doc. 16).

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Upon review of the record, the Court finds that remand for the immediate payment of benefits is proper. Initially, as noted above, it is undisputed the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, for affording less weight to the medical opinions of Mr. Labarre and Dr. Yeh.

Second, the record has been fully developed and there are no outstanding issues, such that further proceedings would not be useful. The ALJ has already had two opportunities to assess the medical opinion evidence, and failed to do so appropriately or consult a ME as previously ordered by the Court. *See Shawn G. v. Kijakazi*, 2021 WL 3683878, *5 (D. Or. Aug. 19, 2021) ("[b]ecause the ALJ twice improperly discredited [the physical therapist's] opinion and made the same errors when reevaluating [his] opinion that the Court identified during the Court's review of the ALJ's original decision, the Court does not believe that giving the ALJ a third opportunity to evaluate

Page 5 – OPINION AND ORDER

[that provider's] testimony will serve a useful purpose"). And plaintiff's date last insured has now lapsed nearly four years ago.

Although the Commissioner cites "unresolved issues requiring further development," the only factual discrepancy the Commissioner identifies is between the medical opinions of plaintiff's treating providers – both of whom indicate plaintiff is significantly functionally limited and/or unable to work – and the state agency consulting sources.[5] Def.'s Resp. Br. 5-6 (doc. 16). As a preliminary matter, a "conflict between medical opinions alone does not render evidence ambiguous." *Freeman v. Colvin*, 669 Fed.Appx. 861, 861 (9th Cir. 2016) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001)).

Even assuming that such a conflict did create ambiguity, "the opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted). Stated differently, further proceedings are not necessary to "resolve inconsistencies between [treating or examining doctor] opinions and those of reviewing medical consultants." *Stone v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5092601, *4 (D. Or. Aug. 26, 2015); *see also Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (remanding for the immediate payment of benefits despite inconsistencies between the claimant's examining doctor and the state agency consulting sources).

---

[5] In 2015 and 2019, the state agency consulting sources found that plaintiff could physically perform a limited range of light work. Tr. 77-79, 90-92, 745-47, 770. In 2015, the state agency consulting sources also found that, mentally, plaintiff was moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, and set realistic goals or work independently of others. Tr. 79-81, 92-94. In 2019, they added restrictions to plaintiff's mental RFC, resolving that he was also moderately limited in his ability carry out detailed instructions, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 747-48, 766, 772.

Page 6 – OPINION AND ORDER

Third, if the opinions of Dr. Yeh or Mr. Labarre were credited as true, the ALJ would be required to make a finding of disability on remand. On November 24, 2015, Dr. Yeh opined that plaintiff could, in relevant part, stand and/or walk for less than two hours total in an eight-hour workday, and sit for less than six hours total in an eight-hour workday. Tr. 464-70. In May and August 2017, Dr. Yeh wrote letters stating plaintiff has longstanding "chronic conditions [with] failed chronic management and physical therapy . . . his physical capability is much limited by the chronic diffuse pain compounded by chronic fatigue." Tr. 591, 1066. The month prior to plaintiff's 55th birthday, Dr. Yeh completed another physical functional capacity evaluation, in which he specified plaintiff needed to lay down four hours total in an eight-hour workday and that "migraines disable [him] for 4 hours twice per week." Tr. 1068. The VE, in turn, testified that an individual with any of these restrictions would not be able to perform the representative occupations "on a full time competitive basis." Tr. 644, 647.

Concerning plaintiff's mental impairments, Mr. Labarre endorsed "moderately severe" or "severe" restrictions – which equate to being off-task "at least" 15% and 20% of the time, respectively – in plaintiff's ability to: remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain a normal routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and set realistic goals or make plans independent of others. Tr. 587-90. The VE stated that an individual "off task or less productive anywhere in the range of 15 to 20 percent" of the workday would not be competitively employable. Tr. 642-45.

Finally, the record, as a whole, does not create serious doubt plaintiff is disabled as of the date of Dr. Yeh's November 24, 2015, assessment.[6] Indeed, the Commissioner does not meaningfully address this element, instead reciting boilerplate caselaw and relying on its prior assertions concerning purported "unresolved issues." Def.'s Resp. Br. 8-9 (doc. 16). An independent review of the record clearly shows plaintiff has sought regular treatment and is highly medicated, but nonetheless suffers from a number of chronic, unremitting conditions. *See, e.g.*, Tr. 1464-65; *see also* Tr. 484 (Ray Raymond, M.D., tapering plaintiff off his longstanding use of benzodiazepines in August 2019 because they were not safe when used in conjunction with his other medications). Nevertheless, while plaintiff alleges disability as of December 2013, there is nothing in the record establishing the presence of concrete functional limitations prohibiting competitive employment on or around that date. In fact, plaintiff did not initiate care with Dr. Yeh until 2014 or Mr. Labarre until 2016, and Dr. Yeh's November 2015 opinion was not rendered retrospectively; the sparse medical records existing prior to that date reflect a wider slate of daily activities. *See, e.g.*, Tr. 1857-80, 2028-221.

In sum, plaintiff applied for benefits seven years ago, and there are no outstanding issues given the opinions of plaintiff's treating providers, especially when viewed in conjunction with

---

[6] As denoted in the Court's prior opinion, plaintiff "stabilized with Suboxone in October 2015" – i.e., prior to Dr. Yeh's November 2015 assessment. Tr. 729. Accordingly, any remaining ambiguities surrounding plaintiff's functional abilities while dependent on opioids are mitigated by the Court's determination related to the disability onset date. This outcome also avoids "the 'heads we win ; tails, let's play again' scenario that the Ninth Circuit instructs district courts to avoid." *Atticus W. v. Kijakazi*, 2021 WL 5108743, *6 (D. Or. Nov. 3, 2021) (collecting cases); *see also Varela v. Saul*, 827 Fed.Appx. 713, 714 (9th Cir. 2020) (reversing district court and instead providing instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 Fed.Appx. 582, 586 (9th Cir. 2020) (remanding "for calculation and award of benefits" where the VE "concluded that an individual with [the claimant's] limitations . . . would be unable to perform competitive employment").

plaintiff's more recent treatment records and the VE's testimony. Thus, although the ALJ failed to consult a medical expert or address plaintiff's period of habitual opioid use, the Court finds the record sufficiently developed as of the date of Dr. Yeh's first physical capacity evaluation, such that the appropriate remedy is to remand this case for the immediate payment of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate payment of benefits as of November 24, 2015.

IT IS SO ORDERED.

DATED this 4th day of May, 2022.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge

Page 9 – OPINION AND ORDER